**AREA PLAN COMMISSION OF EV-ANSVILLE and Vanderburgh County, City of Evansville and Board of Commissioners of Vanderburgh Cty., Appellants–Defendants,**

v.

**EVANSVILLE OUTDOOR ADVERTISING, INC., Appellee–Plaintiff.**

**No. 65A01–0205–CV–161.**

Court of Appeals of Indiana.

May 30, 2003.

D. Timothy Born, Shawn M. Sullivan, Terrell Baugh Salmon & Born, LLP, Evansville, IN, Attorneys for Appellant.

Leslie C. Shively, Shively & Associates, Evansville, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Evansville Outdoor Advertising, Inc. (Evansville Outdoor)[1] filed a declaratory judgment action against the Area Plan Commission of Evansville and Vanderburgh County (the APC), the City of Evansville, and the Board of Commissioners of Vanderburgh County (collectively referred to as the Appellants), seeking to have four ordinances declared invalid and void as a matter of law. The Appellants appeal the trial court's judgment in favor

---

1. Evansville Outdoor is an Indiana corporation principally involved in the construction, leasing, and operation of commercial billboards within the City of Evansville and Vanderburgh County, Indiana.

of Evansville Outdoor and present the following consolidated and restated issue for review: Did the trial court erroneously declare the ordinances, "as they apply to the calculation and imposition of building permit fees on off-premises signs,"[2] void as a matter of law?

We reverse and remand.

In response to inquiries at County Council budget hearings in 1997, the APC began reviewing its schedule of fees along with the fees charged in surrounding areas. This review revealed that it had been "a relatively long time" since most of the fees had been increased, and such fees were "consistently lower than most of the counties used for comparison." *Appendix* at 71. The APC staff concluded that past fee increases had not kept pace with operating costs, which had "increased dramatically in recent years due, in part, to the higher cost of the technology [used] to enter subdivision plats and other information into the computer, along with rising legal costs." *Id.* To offset these increased operating costs, the APC proposed to "increase fees, or establish a fee where one does not currently exist, for most types of activities administered/processed by APC." *Id.*

Following the APC's report, the local legislative bodies in Evansville and Vanderburgh County amended their respective ordinances in late 1997, granting the APC with authority to establish and collect reasonable fees. Evansville, Ind., Code § 15.153.10.168(A)[3] and Vanderburgh County, Ind., Code § 17.36.140(A)[4] contain identical language and state:

The Area Plan Commission shall establish and collect a schedule of reasonable fees associated with processing and hearing administrative appeals, petitions for rezoning, special uses, variances, subdivisions, reviewing permit applications, issuing permits, and other official actions taken under IC Title 36. The fee schedule shall be posted in a prominent place within the Area Plan Commission office where the fee schedule is readily available to the public.

*Appendix* at 65, 67. Prior to these amendments, the schedule of fees was set forth by ordinance rather than established by the APC.

Thereafter, the APC established a new schedule of fees, which became effective on January 1, 1998. Permit fees for off-premise signs (billboards) were among the numerous changes. The prior fee for a billboard permit was $100 and had not been increased since 1989. The APC established a new fee of $1 per square foot with a minimum charge of $100. This resulted in an increase of approximately 600% for the average billboard, which is about 600 square feet. Despite the increase, however, there was a flurry of billboard permits filed in 1999 in anticipation of stricter regulations on the horizon.

In the summer of 1999, approximately eighteen months after the new fee schedule became effective, Evansville and Vanderburgh County adopted comprehensive changes to their respective zoning ordinances regulating the time, place, and manner in which billboards are erected within the municipal boundaries.[5] Among

---

2. *Appendix* at 8.

3. The Common Council of the City of Evansville adopted the amendment on November 17, 1997, and the Mayor approved the ordinance on November 19, 1997.

4. It appears that the Board of Commissioners of Vanderburgh County adopted the amendment on December 1, 1997.

5. The Common Council of the City of Evansville adopted the amendments on June 29, 1999, and the Mayor approved the ordinance

other things, these amendments made the application process for a billboard permit more complex, requiring the applicant to submit certified site plans to the APC. Vanderburgh County, Ind., Code § 17.27.50(D) and Evansville, Ind., Code § 15.153.07.124(D), which are among the amendments, each provide that permit fees for billboards "shall be based on total display area." *Appendix* at 50, 58. The ordinances, however, do not establish the amount of said fees.

On August 22, 2000, Evansville Outdoor filed a declaratory judgment action against the Appellants.[6] Thereafter, on March 27, 2001, Evansville Outdoor filed an amended complaint. Count I of the amended complaint prayed for an order declaring Evansville, Ind., Code § 15.153.10.168(A) and Vanderburgh County, Ind., Code § 17.36.140(A) to be invalid and void as a matter of law. Evansville Outdoor specifically alleged that these ordinances "delegate the power to set the fee for an improvement location permit to the APC" and that "[s]aid delegation to the APC is in violation of IC § 36–1–3–1, *et seq.*, which regulates the power of a municipality and a county to set fees for permits." *Appendix* at 23. Count II of the amended complaint sought an order declaring Vanderburgh County, Ind., Code § 17.27.50(D) and Evansville, Ind., Code § 15.153.07.124(D) to be invalid and void as a matter of law. The complaint noted that these ordinances "allow the APC to base the fee charged for an improvement location permit on total display area of the proposed sign." *Id.* at 24. The complaint then alleged that "[s]aid fee structure has no relationship to the administrative duties performed by the APC in issuing an im-

provement location permit for an outdoor advertising facility", and, therefore, the ordinances "violate Indiana law, which specifically prohibits the imposition of a permit fee that is in contravention of IC § 36–1–3–8(a)(5)." *Id.* Finally, in Count III of the amended complaint, Evansville Outdoor sought an award of damages for alleged overpayment of fees, in addition to attorney fees and costs.

The cause proceeded to a bench trial on October 30, 2001. After hearing evidence, the trial court took the matter under advisement. On February 4, 2002, the trial court entered its declaratory judgment, which provided in part:

## I.

## FINDINGS OF FACT

According to Defendants' Exhibit # 4 (D–4), on October 1, 1997, the Executive Director of the Evansville–Vanderburgh County Area Plan Commission distributed a packet of information to Commission members in support of the proposed increase in certain fees she planned to ask for in November, 1997.

\* \* \*

Barbara L. Cunningham, the Executive Director, authorized the report to the Area Plan Commission and testified at trial as to its contents.

Prior to the adoption of Evansville City Ordinance, Sections 15.153.10.168(A) and 15.153.10.168(A) [sic] and 17.36.140(A) and 17.36.140(A) [sic] of the Vanderburgh County Code a flat fee of $100.00 was charged for a billboard erection permit and the gov-

---

on July 13, 1999. Thereafter, the Board of Commissioners of Vanderburgh County adopted its respective amendments on August 9, 1999.

**6.** The cause was originally filed in Vanderburgh County but was transferred to Posey County on December 15, 2000.

ernment provided its own inspections of potential sites.

After the adoption of these amended Ordinances the charge became one dollar per square foot per side plus the advertiser was required to prepare and furnish surveys, site plans and other preparatory items which had been the obligation of the Government.[7]

Director Cunningham testified that the new fee structure resulted in a 600% increase in fees alone for one-sided billboards plus the significant additional cost for preparation to applicants.

\* \* \*

Cunningham testified these fees had not been changed in several years and had not kept up with the cost of administering the zoning of billboards, especially the legal fees associated with defending court actions brought against the [APC] since the amendment of the Codes.

Cunningham testified that since the adoption of the new ordinances 80% of the APC's legal expenses were incurred due to questions related to billboards.

Before the adoption of the current ordinance the Government was not involved in much litigation over billboards according to Beverly Behne, Zoning Administrator for the [APC].

The fee for a billboard permit is based on the size of the proposed sign. One dollar per square foot per side under the amended code for billboards is the only non-flat fee charged for any building permit.

No evidence was introduced at trial that there was any correlation or relationship between the size of a billboard

and the Government's cost of regulating them. In fact, Cunningham testified that she had no documentation of her assertion that the larger the billboard the greater was the cost in staff time and or legal fees.

The "APC FEES FACT SHEET" (D4), indicates that the increase in the Government's cost of regulation was due ... "[T]o the higher cost of technology we use to enter subdivision plats and other information into the computer, along with rising legal costs."

No increase was attributed to billboards or legal fees related thereto.

The Purpose of the Amended Code is set forth in § 17.27.10:

... "[T]o provide reasonable standards for off-premise advertising signs while discouraging their proliferation, disrepair, or garishness." (D1)

The evidence does not establish any nexus between the reasonable cost of regulating billboards and the method of assessing fees. In fact, the precipitous increase in fees for billboards appears to have no connection to the Government's cost of regulation but only to the discouragement of their erection.

## II

### CONCLUSIONS OF LAW

The APC's current fee structure for billboard permits is not reasonably related to the administrative cost of exercising regulatory power. It is a revenue tax and is being used for the purpose of discouraging billboards. This is impermissible.

---

**7.** We note that the schedule of fees adopted by the APC was established well before the comprehensive amendments to the billboard ordinances, including Vanderburgh County, Ind., Code § 17.27.50(D) and Evansville, Ind., Code § 15.153.07.124(D).

*City of Portage v. Harrington,*

598 N.E.2d 634 (Ind.App.1992).

The Court must give great deference to the legislative bodies of Evansville and Vanderburgh County. The Court may not re-write legislation but must leave it to the elected and appointed public servants to devise a regulatory scheme which complies with Indiana law.

*Bryant v. County Council of Lake County,*

720 N.E.2d 1 (Ind.App.1999).

Evansville and Vanderburgh County may enact building codes, including reasonable fees, which require the owners of private property to comply with regulations which have the purpose of protecting the welfare and safety of the governmental unit's citizens. But the regulatory scheme may not include fees which are not reasonably related to the recoupment of actual costs of administration nor which are imposed differently on different applicants unless there is a rational basis for distinguishing between fees charged to various applicants.

*Evansville Outdoor Advertising v. BZA,*

757 N.E.2d 151

*Ad–Craft, Inc. v. BZA,*

693 N.E.2d 110 (Ind.App.1998).

Evansville Code Sections 15.153.10.168(A) and 15.153.07.124(D) and Vanderburgh County Code Sections 17.36.140(A) and 17.27.50(D) as they apply to the calculation and imposition of building permit fees on off-premises signs, billboards, are void as a matter of law.

\* \* \*

### III

### JUDGMENT

Evansville City Code Sections 15.153.10.168(A) and 15.153.07.124(D) and Vanderburgh County Code Sections 17.36.140(A) and 17.27.50(D) and all other sections of the Code which purport to set fees for off-premises signs building permits are void as applied to Evansville Outdoor Advertising and all others similarly situated.

*Appendix* at 6–9.

The Appellants subsequently filed a motion to correct error, arguing that the ordinances (which do not set the amount of the fee) are not facially invalid. The Appellants further urged the trial court to proceed with deciding the central issue of "whether APC's Fee Schedule, and the amount of $1.00 per square foot established therein, is obviously and largely beyond the costs of permitting and inspecting billboards[.]" *Appendix* at 39. The trial court overruled the motion to correct error on April 3, 2002. The Appellants now appeal.

We initially observe that the parties to this appeal do not agree on the effect of the trial court's judgment. The Appellants maintain that the trial court's ruling struck down the ordinances as facially invalid. On the other hand, Evansville Outdoor contends that it is the fee adopted by the APC, pursuant to the authority conferred by these respective ordinances, which the trial court found to be invalid. Evansville Outdoor specifically asserts, "[t]he issue presented to the trial court and the decision of the trial court did not involve the determination of the validity of the of [sic] Municipal Ordinance § 15.153.07 and/or Vanderburgh County Code § 17.27.50(d) [sic]." *Appellee's Brief* at 4–5. Our review of the amended complaint, however,

reveals that the trial court was presented with a direct challenge to the validity of the four ordinances.[8] Further, the trial court's judgment reveals that, as requested by Evansville Outdoor, it declared each ordinance (as applied to billboard permit fees) void as a matter of law. We, therefore, will review the validity of each ordinance.

■ We first address the validity of Evansville, Ind., Code § 15.153.10.168(A) and Vanderburgh County, Ind., Code § 17.36.140(A). These ordinances delegate to the APC the authority to establish a schedule of reasonable fees associated with various administrative functions. The ordinances are merely a codification of Ind. Code Ann. § 36–7–4–411 (West 1997), which provides:

> The plan commission may establish a schedule of reasonable fees to defray the administrative costs connected with:
>> (1) processing and hearing administrative appeals and petitions for re-zoning, special exceptions, special uses, contingent uses, and variances;
>> (2) issuing permits; and
>> (3) other official actions taken under this chapter.

As I.C. 36–7–4–411 specifically allows for such delegation, the trial court erred in declaring Evansville, Ind., Code § 15.153.10.168(A) and Vanderburgh County, Ind., Code § 17.36.140(A) void.

The trial court also declared Vanderburgh County, Ind., Code § 17.27.50(D) and Evansville, Ind., Code § 15.153.07.124(D) void. These ordinances were part of a comprehensive change to the billboard zoning laws and were adopted over one year after the APC set the current fee schedule. Each ordinance provides that permit fees for billboards "shall be based on total display area." *Appendix* at 50, 58. They do not, however, establish the amount of said fees.[9]

■ The trial court specifically found that there was no evidence presented at trial that there is a correlation between the size of a billboard and the administrative cost of regulating billboards. The trial court seemed to require empirical evidence showing that larger billboards require more staff time and/or legal fees. In sum, the trial court concluded that the evidence did not establish any nexus between the reasonable cost of regulating billboards and the method of assessing fees, and, therefore, the local legislative bodies lacked a rational basis for requiring billboard fees to be based on total display area. We cannot agree.

■ Courts may not inquire into the motives of the members of a local legislative body when acting in its legislative capacity. *Bryant v. County Council of Lake County*, 720 N.E.2d 1 (Ind.Ct.App. 1999), *trans. denied; see also FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant ... whether the conceived reason for the challenged distinction actually motivated the legislature"). Absent a state or federal law to the contrary, courts should not intervene in the local legislative process if it is supported by some rational basis. *Bryant v. County Council of Lake County*, 720 N.E.2d 1. " '[G]overnmental action passes the rational basis test if a sound

---

8. At trial, counsel for Evansville Outdoor specifically stated, "[i]n this particular case we are challenging the validity of the ordinance". *Transcript* at 8.

9. We observe that the ordinances do not even require that the fees be charged on a per foot basis.

reason may be hypothesized. The government need not prove the reason to a court's satisfaction.'" *N.B. v. Sybinski,* 724 N.E.2d 1103, 1112 (Ind.Ct.App.2000) (quoting *Northside Sanitary Landfill, Inc. v. City of Indianapolis,* 902 F.2d 521, 522 (7th Cir.1990)), *trans. denied; see also FCC v. Beach Communications, Inc.,* 508 U.S. at 315, 113 S.Ct. 2096 ("a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"); *Crafton v. Gibson,* 752 N.E.2d 78 (Ind.Ct.App.2001).

At trial, the Appellants not only hypothesized, but also presented evidence of a correlation between administrative cost and sign size. In particular, the APC's executive director, Barbara Cunningham, testified that the larger a sign is, the more enforcement compliance problems there tend to be. She testified regarding said correlation:

XQ: Okay, now, Mrs. Cunningham, is it true that in your experience that the larger signs tend to involve more time on the part of your staff?

A: It is an ongoing inspection of staff. It does, it does take a lot more time, there are often, we have to keep track of it, more post than, afterwards then [sic] we do before, because we have to make sure that it conforms with the zoning code, that it is not advertising an on premise operation, that the embellishments are included, you know, that we have that. Those are looked at each time, so, I mean, you pay the one time fee and then you check it for the rest of the lifetime of the sign.

XQ: So the larger signs tend to be the more intensely advertised signs.

A: That seems to be, we also would have, perhaps a smaller sign that someone, who is not immediately on Green River Road, that wants to advertise, Signature Inn or something like that, that wants to advertise their thing. Those are small but those are stable, and those don't change, you know, in the off premise signs.

XQ: Uh,

A: And the litigation costs are expensive on signs. In fact, I would say most of our, our money spent for legal fees involves litigation on signs.

*Transcript* at 34–35. An APC staff member, Laura Lamb, testified that the issuance of a billboard permit could involve up to six employees, in addition to consultation with APC attorneys. She further explained that the APC's work does not end with the issuance of a billboard permit, as the APC must inspect and verify compliance for the lifetime of the billboard. Finally, Beverly Behne, the APC's zoning administrator, testified that billboards are the most frequent zoning issue that requires staff attention and explained that a great deal of staff time is required when compliance issues are litigated.

The trial court improperly required the Appellants to present empirical evidence to support the testimony set forth above. The local legislative bodies clearly had a rational basis for requiring billboard permit fees to be based on total display area, as one could reasonably infer a correlation between sign size and administrative cost incurred by the APC. Therefore, the trial court erred in declaring Vanderburgh County, Ind., Code § 17.27.50(D) and Evansville, Ind., Code § 15.153.07.124(D) void.

■ The trial court's inquiry should have been limited to whether the actual fee

established by the APC violates Ind.Code Ann. § 36–1–3–8(a)(5) (West 1997), which places a limit on a local legislative body's ability to assess administrative fees.[10] This provision of the Home Rule Act provides that the local government does not have: "The power to impose a license fee greater than that reasonably related to the administrative cost of exercising a regulatory power." I.C. § 36–1–3–8(a)(5). We have explained this limitation as follows:

A license fee, authorized solely to carry out a regulatory purpose, must be limited to the probable expense of issuing the license, inspecting and regulating the activity. A license fee which is not related to regulatory costs constitutes an impermissible revenue measure.

In general, the cases that have dealt with the question of what is "reasonably related" under IC 36–1–3–8(5) have approached the question from the standpoint of the *amount* charged. When reviewing the amount charged as a license fee a court will defer to the legislative branch. The court will not generally compute the difference between administrative costs and the amounts collected. *A license fee will not be declared a revenue tax unless it is clearly shown to be obviously and largely beyond what is needed for the regulatory services rendered.*

*City of Portage v. Harrington,* 598 N.E.2d 634, 637 (Ind.Ct.App.1992) (citations omitted) (first emphasis in original and second emphasis supplied).

█ In the instant case, the trial court made no finding as to whether Evansville Outdoor had clearly shown the amount of the fees established by the APC to be obviously and largely beyond what is needed for the regulatory services rendered. Rather, the trial court's focus was on the method of accessing fees as opposed to the actual amount of the fee established by the APC. We have determined that the legislative decision to assess fees for billboard permits based on sign size is not irrational. Therefore, we remand to the trial court for further evidentiary proceedings and a proper determination of whether the fee of one dollar per square foot is obviously and largely beyond the costs incurred by the APC to permit, inspect, and regulate billboards.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

BROOK, C.J., and ROBB, J., concur.

---

**10.** The trial court's judgment does not even cite to this statute.